# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| BRIAN STANTON, | : | |
| Plaintiff, | : | Case No. 3:14cv00329 |
| vs. | : | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | : | Chief Magistrate Judge Sharon L. Ovington |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.  Introduction and Procedural History

Plaintiff Brian Stanton brings this case challenging the Social Security Administration's denial of his application for Disability Insurance Benefits (DIB). He asserts here, as he did before the administration, that he has been under a benefits-qualifying disability – starting on December 4, 2007 – due to lumbosacral spondylosis; osteoarthritis; hip and right hand arthritis; sacral sprain; sacroiliitis; depression; and anxiety. (*PageID##* 533, 565).

Plaintiff originally filed an application for DIB on March 22, 2005, alleging a disability onset date of April 15, 2003. Following an administrative hearing,

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Administrative Law Judge (ALJ) Melvin Padilla issued a decision on December 3, 2007 finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*PageID##* 216-31).

Plaintiff filed his current application for DIB on July 22, 2008. (*PageID##* 527-28). Following another administrative hearing in April 2011, Plaintiff's claim was denied by ALJ Eve Godfrey on April 28, 2011. (*PageID##* 235-45).

The Appeals Council remanded the case, finding the ALJ failed to address the requirements of Acquiescence Ruling 98-4(6) when increasing Plaintiff's functional ability. (*PageID##* 253-55).

Upon remand, ALJ Amelia Lombardo held additional hearings on May 24, 2012 and March 6, 2013. On June 21, 2013, ALJ Lombardo issued a decision finding again that Plaintiff was not disabled. (*PageID##* 73-86). Following denial by the Appeals Council, Plaintiff commenced this action under 42 U.S.C. §§ 405(g).

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. # 11), the administrative record (Doc. #6), and the record as a whole.

**II.    Background**

    **A.    Plaintiff's Profile and Testimony**

Plaintiff was 45 years old on his date last insured, placing him in the category of a "younger person" for purposes of resolving his claim for DIB. *See* 20 C.F.R. § 404.1563(c). He has a 10th grade education. (*PageID#* 572). He also has 2 years of

additional training in auto body repair, as well as training to qualify as a union journeyman carpenter.  (*PageID#* 573).  Plaintiff has past relevant work experience as a carpenter, construction worker, and foreman/labor supervisor.  (*PageID##* 84, 152-53, 580).

At his administrative hearing in May 2012, Plaintiff testified that he stopped working in 2003 because the "pain just got too bad . . . walking killed me."  (*PageID#* 138). He has not had surgery on his back.  (*Id.*).

At the hearing, Plaintiff had a cane, which he testified he used all the time. (*PageID#* 141).  He estimated that he could walk "maybe a half a block . . . out to my car." (*Id.*).  30 minutes seemed to be the maximum time that he could sit or stand.  (*Id.*).  He can lift a milk jug or full coffee pot.  (*Id.*).  Plaintiff testified that he was independent in self-care.  (*PageID##* 142, 145).  His wife does the household chores.  (*Id.*).  Plaintiff testified that he spends a typical day watching television.  (*Id.*).  He does not prepare his own meals.  (*PageID##* 142-43).  He has a driver's license, but "rarely" drives.  (*PageID#* 137).

      **B.**    **Medical Evidence**

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources.  A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff have accurately summarized the relevant records concerning Plaintiff's physical and mental conditions with citations to specific evidence.

### III.     "Disability" Defined and the ALJ's Decision

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[2]  42 U.S.C. § 423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ Amelia G. Lombardo applied the Social Security Administration's 5-Step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)(4). Steps 2, 3, and 4 are the most significant in this case.

At Step 2, the ALJ concluded that, through the date last insured, Plaintiff had the severe impairments of mild osteoarthritis of the lumbosacral spine; depression; and anxiety. (*PageID#* 78).

At Step 3, the ALJ concluded that through the date last insured, Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments, including Listings 1.04, 12.04 and 12.06. (*PageID##* 79-80).

---

[2] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

At Step 4, the ALJ concluded that through the date last insured, Plaintiff retained the residual functional capacity (RFC)[3]:

> to perform light work as defined in 20 CFR 404.1567(b). Giving [Plaintiff] the full benefit of doubt with regard to his allegations and subjective complaints, it is found that he was limited to unskilled work. He was further limited to low stress work that would not require assembly line production quotas or fast pace.

(*PageID#* 80). The ALJ also concluded at Step 4 that there is no evidence of adverse side effects from treatment or medications that would have prevented Plaintiff from working at the light level of exertion through the date last insured. (*PageID##* 82-83). The sum and substance of the ALJ's sequential evaluation ultimately led the ALJ to conclude that Plaintiff was not under a benefits-qualifying disability at any time from December 4, 2007 (the alleged onset date) through December 31, 2008 (the date last insured). (*PageID#* 85).

## IV.  Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708,

---

[3] A social-security claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.   Discussion

### A.   Plaintiff's Disability Insured Status

The Disability Insurance Program is designed to provide insurance benefits to those under a disability who have gained insured status under the Program. Insured status is gained by working long enough, and thus contributing enough to the Program, to satisfy

specific requirements detailed by regulation. *See e.g.,* 20 C.F.R. §§ 404.110, 404.120, 404.130-32, 404.315(a)(1). A person who is "neither fully nor currently insured . . . " on his or her disability onset date is not eligible to receive Disability Insurance Benefits. 20 C.F.R. §§ 404.101(a), 404.131; *see Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984).

In the instant case, Plaintiff's work and earnings over the years qualified him for insured status under the Disability Insurance Program through December 31, 2008. He must therefore show he was under a benefits-qualifying disability on or before December 31, 2008. *See Richardson*, 750 F.2d at 509. Thus, Plaintiff must show that he was under a disability during the 13-month period between the date he claims his disability began and his date last insured: December 4, 2007 to December 31, 2008.

### B.     Medical Source Opinions

Plaintiff contends the ALJ did not properly weigh the treating medical source opinion of Abdul Mubarak, M.D. Plaintiff maintains that although Dr. Mubarak's opinion is after Plaintiff's date last insured, there is no indication that Dr. Mubarak's opinion was not relevant to Plaintiff's condition in 2007. (Doc. #7, *PageID#* 1449).

The Commissioner argues that Plaintiff has not shown he was disabled during the relevant period – December 4, 2007 to December 31, 2008. The Commissioner also argues that the ALJ properly rejected Dr. Mubarak's opinion because it is not supported by evidence in the record. (Doc. #10).

Social security regulations recognize several different categories of medical

sources: treating physicians, nontreating yet examining physicians, and nontreating yet record-reviewing physicians. *Gayheart v. Comm'r Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Gayheart*, 710 F.3d at 375 (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1), (d) (eff. April 1, 2012)).

A treating source's opinion may be given controlling weight under the treating physician rule only if it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Gayheart*, 710 F.3d at 376; *see* 20 C.F.R. § 404.1527(d)(2) (eff. April 1, 2011). "If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)-(6) (eff. April 1, 2012).

Unlike treating physicians, "opinions from nontreating and nonexamining sources

are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling.  Other facts 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.*  (citing 20 C.F.R. §404.1527(c)(6) (eff. April 1, 2012)).

On September 21, 2010, Abdul Mubarak, M.D., one of Plaintiff's treating physicians from the Pain Evaluation & Management Center, reported that Plaintiff was permanently and totally disabled. (*PageID#* 916).  Dr. Mubarak reported that, as of September 2010, he had treated Plaintiff for approximately 1 year.  (*PageID#* 903).  Dr. Mubarak opined that Plaintiff could not perform sedentary work and was essentially disabled. (*PageID##* 898-912).  Specifically, according to Dr. Mubarak, based on the diagnoses of degenerative lumbar disc, lumbar disc displacement, and post-laminectomy syndrome, Plaintiff could: occasionally lift/carry 5 pounds; frequently lift/carry 2 to 5 pounds; stand/walk for 5 hours out of 8 and uninterrupted for 1/3 of an hour; occasionally balance, stoop, crouch, kneel, and crawl.  Plaintiff's sitting was not restricted, except that he could sit uninterrupted for only 30 minutes.  He could never climb and was found to be limited in his ability to push/pull, owing to poor muscle strength. (*PageID#* 900).  He also was limited from heights and moving machinery.  Plaintiff had an impaired balance, poor dexterity, and decreased reaction. (*PageID#* 901).  Dr. Mubarak stated, "[n]eed to factor in pain with inability to maintain sustained activity for employment." (*PageID#* 905).

ALJ Lombardo noted that Dr. Mubarak, as a treating source, reported that Plaintiff was disabled from all work activity. (*PageID#* 81). The ALJ then set forth and applied the correct legal criteria under the treating physician rule and declined to give Dr. Mubarak's opinions controlling or deferential weight consistent (PageID# at 81-82) with the standards set by the Regulations, 20 C.F.R. § 404.1527(d)(2), and case law. *See Wilson*, 378 F.3d at 544. The ALJ explained:

> When evaluated under these guidelines, the conclusion of Dr. Mubarak that the claimant is disabled/unemployable cannot be given controlling, or even deferential, weight. The physician's opinion is inconsistent with the medical record, which documents only mild spinal disease, rather it appears to be based solely on an uncritical acceptance of the claimant's subjective pain complaints. In addition, the opinion is dated after the date last insured, and, as such, lacks probative value. Accordingly, the undersigned has afforded it no weight.

(*PageID#* 82). The ALJ then continued to weigh Dr. Mubarak's opinions under several applicable regulatory factors – specifically, "supportability," "consistency," and "specialization" – to determine whether any weight was due Dr. Mubarak's opinions. *See* 20 C.F.R. § 404.1527(d)(2)-(5); *see also Wilson*, 378 F.3d at 544. The ALJ examined the supportability and consistency factors by considering the objective evidence in the record. X-rays of the right hip taken in June 2007 showed only mild spurring, and x-rays of the left hip in June 2007 were negative. (*PageID##* 695-96). The ALJ found that although x-rays of the sacroiliac joint in September 2007 showed degenerative arthrosis of the left sacroiliac joint with sclerosis (*PageID#* 83, citing to *PageID#* 694), electrodiagnostic studies in September 2007 were normal. (*PageID##* 827-29). Lisa F. Lichota, D.O. – in

the same practice as Dr. Mubarak – found Plaintiff to be neurologically intact in May 2008. (*PageID#* 724). Physical examinations conducted by Richard M. Donnini, D.O. – also in the same practice of Dr. Mubarak – continued to show negative straight leg raise testing, no significant restriction in the range of motion of the spine or extremities, and no muscle spasms. (*PageID##* 706-07). By evaluating Dr. Mubarak's opinions in this manner, under the treating physician rule and several of the remaining regulatory factors, the ALJ applied the correct legal criteria.

In addition, Dr. Mubarak reported that he did not begin treating Plaintiff until September 2009, approximately 9 months after the expiration of Plaintiff's insured status. (*PageID#* 903). His September 2010 opinions were therefore not offered until almost 2 years after the expiration of Plaintiff's insured status and lack probative value. *See Strong v. Soc. Sec. Admin.*, 88 Fed. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value.")(citations omitted). Likewise, Dr. Mubarak did not relate either of his opinions back to any time prior to December 31, 2008, when Plaintiff's insured status expired. To be relevant to the disability decision, "[p]ost-expiration evidence must be related back to the claimant's condition prior to the expiration of her date last insured." *Wirth v. Comm'r of Soc. Sec.*, 87 Fed. App'x 478, 480 (6th Cir. 2003) (citing *King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990)).

Accordingly, the ALJ did not err in rejecting Dr. Mubarak's opinions.

**C.** **Additional Severe Impairments and Credibility of Plaintiff**

According to Plaintiff, the ALJ erred in finding that he had mild osteoarthritis as the record shows that he had rheumatoid arthritis that affected his sacroiliac joints as far back as 2007. (Doc. #7, *PageID#* 1444). This, in turn, led the ALJ to find Plaintiff not credible.

20 C.F.R. § 404.1520(c) explains that a "severe impairment" refers to an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." The "severe impairment" determination at step two of the sequential analysis has been characterized as a "de minimis hurdle." *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) ("[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."); 20 C.F.R. § 404.1521(a). Although, "in the vast majority of cases a disability claim may not be dismissed without consideration of the claimant's individual vocational situation.... the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs*, 880 F.2d at 862-63.

Plaintiff argues that the ALJ failed to analyze this case under the proper medical impairments and the restrictions caused by Plaintiff's actual impairments. (Doc. #7, *PageID#* 1445). Plaintiff argues that Dr. Brahms testified at the March 6, 2013 administrative hearing that the 2011 MRI showed rheumatoid arthritis, and not degenerative disc disease as the ALJ found. (Doc.# 7, *PageID#* 1445). The ALJ relied on Dr. Brahms testimony to determine Plaintiff's RFC, giving his expert medical testimony "significant weight." (*PageID#* 81).

The ALJ considered Plaintiff's nonsevere impairments together with his severe impairments in the remaining steps of the sequential evaluation process and properly accounted for the limitations imposed by both. *See* 20 C.F.R. §§ 404.1545(e). Because the ALJ properly considered all of Plaintiff s impairments (both severe and non-severe) in determining Plaintiff's RFC, any alleged failure to characterize certain impairments as "severe" at Step 2 of the sequential evaluation is legally irrelevant and constitutes harmless error. *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2010) (citing *Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987)).

In determining if Plaintiff's allegations are credible, the ALJ noted that Plaintiff's "residual functional capacity for a reduced range of light work . . . adequately addresses the location, duration, frequency, and intensity of [Plaintiff's] alleged symptoms, as well as, precipitating and aggravating factors. There is no evidence of adverse side effects from treatment or medications that would have prevented [Plaintiff] from working at the light level of exertion through the date last insured." (*PageID#* 83). The ALJ also found that, through the date last insured, Plaintiff's activities of daily living were not restricted; his treatment was conservative; and he did not require hospitalization or surgical intervention for his spinal problems. (*Id.*). There was no evidence in the record of a treating or examining source prescribing an ambulatory aid. The ALJ also determined that there is also no evidence of spinal cord stenosis or nerve root compromise that would support its need. It is further noted that no treating source opined disability through the date last insured. There is no evidence of any mental health treatment, either inpatient or outpatient,

13

prior to the date last insured. (*Id.*)

For these reasons, this portion of Plaintiff's Statement of Errors also lacks merit.

### D.     **Combination of Impairments**

Plaintiff further contends the ALJ erred by failing to consider the combination of Plaintiff's physical and mental impairments. (Doc. 7, *PageID#* 1446). Plaintiff emphasizes that "Dr. Abdul Mubarak, Mr. Stanton's treating physician, on September 23, 2010, stated that Mr. Stanton's combination of physical and mental impairments were greater than the sum of the parts. (*PageID##* 903-04)." (*Id.*, *PageID#* 1447).

"The Social Security Act requires [the Commissioner] to consider the combined effects of impairments that individually may be nonsevere, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability. *See Tedrick v. Astrue*, No. 2:09–cv–00763, 2010 WL 3894598, at *14-55 (S.D. Ohio August 9, 2010), citing *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988) (citing 42 U.S.C. § 423(d)(2)(C)). The ALJ's decision in the present case complied with this statutory mandate.

As noted above, the ALJ found at Step 2 of the sequential evaluation that through the date last insured Plaintiff suffered from severe impairments, including "mild osteoarthritis of the lumbosacral spine; depression; and anxiety." (*PageID#* 78). The ALJ then listed all the medical evidence which established Plaintiff's impairments. (*PageID##* 78-80). The ALJ's consideration of multiple severe impairments – evidenced in part by the use of the plural, "impairments" – indicates she considered the combination of Plaintiff's

impairments at Step 2.

At Step 3, the ALJ determined that through the date last insured, Plaintiff "did not have an impairment or combination of impairments" that met or equaled the severity of a listing-level impairment. (*PageID#* 79). This conclusion reflects that the ALJ considered the combined impact of Plaintiff's impairments on his work abilities, not only because the ALJ plainly referred to the "combination of impairments" – again, in the plural – but also because she reached this conclusion as part of her consideration of the medical evidence of record concerning Plaintiff's multiple impairments (both physical and mental), and Plaintiff's testimony during the administrative hearing. *See PageID##* 78-84; *see also Foster*, 853 F.2d at 490; *cf. Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (ALJ's specific reference at Step 3 to claimant's "combination of impairments" satisfied ALJ's duty to consider combined impact of impairments).

The Court's duty in ruling on an appeal from a finding of non-disability rendered by the ALJ is not to determine whether the record contains substantial evidence of a disability, rather, it is to determine whether the ALJ's non-disability decision is supported by substantial evidence. In this matter, the decision is so supported. *See Blakley*, 581 F.3d at 406 ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.").

Accordingly, Plaintiff's Statement of Errors lacks merit and the ALJ's decision should not be disturbed.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability determination be **AFFIRMED**; and

2. The case be terminated on the docket of this Court.


July 7, 2015

                  s/Sharon L. Ovington
                   Sharon L. Ovington
              Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).